**AKTIEN–GESELLSCHAFT FÜR FEINMECHANIK, VORMALS JETTER & SCHEERER, v. KNY–SCHEERER CORPORATION.**

Patent Appeal No. 3359.

Court of Customs and Patent Appeals.

Feb. 25, 1935.

BLAND, Associate Judge, dissenting.

———◆———

Thomas L. Mead, Jr., and Elmer Stewart, both of Washington, D. C., for appellant.

Clarence G. Campbell, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

On July 1, 1931, appellee, Kny-Scheerer Corporation, a corporation organized under the laws of the state of New York, filed petition in the United States Patent Office seeking cancellation of a trade-mark registration, No. 269,353, granted on April 1, 1930, to appellant, Aktien-Gesellschaft Für Feinmechanik (hereinafter referred to as A. G. F. M.), of Tuttlingen, Germany.

Upon hearing by the Examiner of Interferences, he rendered decision recommending cancellation. This decision was affirmed by the Commissioner of Patents, and from the latter decision the instant appeal to this court was taken.

The mark, which consists of the word "Aesculap," was claimed for use on surgical, chirurgical, and medicinal instruments; many of such instruments being designated eo nomine. Also included were furniture for sick rooms and various specifically named articles of furniture for hospital and clinical uses. The registration was granted under the Trade-Mark Registration Act of 1905, as amended (15 USCA § 81 et seq.).

In the certificate of registration appellant alleged continuous use "since November 10, 1899," and it is stated, in effect, that it had neither assigned the trade-mark nor abandoned its use, but that it had continuously used it since the date mentioned. The certificate also recites that appellant "is the owner of United States Trademark registration No. 34,826, issued June 26, 1900." The last-named registration was of the same word for substantially the same uses. It was further stated in the certificate that the trade-mark had been registered in Germany on July 10, 1900; this statement being required by the provisions of section 2 of the aforesaid Trade-Mark Registration Act as amended in 1909 (15 USCA § 82).

It appears that. while the question of registration of the mark here involved (No. 269,353) was being considered in the Patent Office, there was a tentative rejection of same upon said registration No. 34,826, and thereafter appellant amended its application so as to assert its ownership of the latter named mark, following which, with other amendments not here material, the registration was granted.

It is the contention of appellee that appellant was not, at the time of the registration, the owner of the mark embraced in registration No. 34,826, but that the title thereto was in appellee by reason of various transfers and assignments, as hereinafter related, and that appellant, therefore, had no right to claim ownership.

A somewhat detailed historical statement seems essential to a clear understanding of the issue.

It appears that prior to 1895 there existed in Germany an organization under the name

and style of Jetter & Scheerer, which was engaged in the manufacture of surgical and other instruments of the kind described in the trade-mark registration involved, and that this organization established a firm by name of Jetter & Scheerer in New York through which all its merchandise shipped to the United States was handled.

In 1895, or thereabout, the German organization was merged into the corporation A. G. F. M., which is the appellant here. Thereafter, in 1896, a New York organization by the name of Richard Kny & Co. negotiated a contract with A. G. F. M., whereby it purchased the Jetter & Scheerer organization of New York, and in 1897 there was organized, under the laws of the state of New York, a corporation by the name of "The Kny-Scheerer Company," which carried on the business in the United States; its relation to A. G. F. M. seemingly being that of exclusive selling agent.

On June 26, 1900, A. G. F. M. registered the word "Aesculap" (registration No. 34,-826, supra), in the United States Patent Office, alleging use "since the 10th of November, 1899." This registration appears to have been under the Trade-Mark Registration Act of 1881 (21 Stat. 502), and, by the terms of that act, had a duration of thirty years, or until June 26, 1930. That it was applied to the goods handled by the Kny-Scheerer Company as agents, in the United States, of A. G. F. M., is not in dispute.

The charter of the Kny-Scheerer Company seems to have been granted for a limited period, and about 1915 it was taken over by a newly organized corporation entitled "The Kny-Scheerer Corporation," which continued to carry on the United States business of A. G. F. M. as exclusive selling agent. It was so engaged in 1917 when the United States became involved in war with Germany.

The record contains, as Appellee's Exhibit C, a copy of an assignment executed June 21, 1919, by Francis P. Garvin, Alien Property Custodian, in which it is recited that, acting under the Trading with the Enemy Act of October 6, 1917, §§ 7, 12 (vide chapter 106, 40 Stat. 411, 416, 423), as amended by subsequent acts (vide chapter 28, 40 Stat. 460, chapter 201, 40 Stat. 1020) 50 USCA Appendix §§ 7, 12, together with executive orders and proclamations issued in pursuance thereof, he had seized certain properties. It is stipulated by counsel for the respective parties that the here material recitals of this instrument as to the seizure so made is as follows:

"(1) Every contract agreement of every description between Aktiengesellschaft · Für Feinmechanik vormals Jetter & Scheerer and the Kny-Scheerer Corporation, and every right, title and claim created in favor of or granted to said Aktiengesellschaft für Feinmechanik vormals Jetter & Scheerer by the terms of any contract or agreement by which said The Kny-Scheerer Corporation was given the right or privilege of using in the business, trademarks, tradenames, good-will and other property of said Aktiengesellschaft für Feinmechanik vormals Jetter & Scheerer, in return for which certain sums of money or portion or portions of profits earned by said The Kny-Scheerer Corporation were to be paid as compensation for such use, together with every right and claim to compensation or damages from said The Kny-Scheerer Corporation, or to any part of the profits earned by said The Kny-Scheerer Corporation, based upon or growing out of any use heretofore made by said The Kny-Scheerer Corporation of any patents, trademarks, tradenames, good-will or other property of said Aktiengesellschaft für Feinmechanik vormals Jetter & Scheerer. * * *

"(3) Trademarks registered in the United States Patent Office (subject to the rights of The Kny-Scheerer Corporation), identified as follows:

| No. | Date. | Mark. | Goods. |
|---|---|---|---|
| * * * | * * * | * * * | * * * |
| 34,826.. | June 26, 1900 | Aesculap | Surgical devices and furniture |

together with the good-will of the business pertaining to said trade marks and the certificates of registration thereof. * * *"

The foregoing instrument further recites, in effect, as is also stipulated by counsel, that: "* * * By reason of a certain public sale of two thousand (2,000) shares of the capital stock of said The Kny-Scheerer Corporation, held under an order of sale made by him on the 4th day of April, 1919, the aforesaid property was on the 24th day of April, 1919, the date of sale named in said order, sold to Holley Securities Corporation, a corporation of New York, located at 68 New Street, New York, N. Y., it being then and there the highest bidder therefor; the said Francis P. Garvin, Alien Property Custodian, did by this assignment sell, as-

sign, transfer and set over unto Holley Securities Corporation the property so seized including the trademark No. 34,826 dated June 26, 1900, for mark Aesculap."

It may be here said that the record presented to us gives no explanation whatsoever with respect to the sale of the "two thousand (2,000) shares of the capital stock of said The Kny-Scheerer Corporation," except that which appears in the foregoing excerpt from the stipulation. Why, or in what manner, the shares passed into possession of the Alien Property Custodian does not appear, nor is it shown whether said 2,000 shares represented the entire stock of the said corporation, or only a portion thereof. No instrument showing their seizure was placed in the record.

However, no question has been here raised as to the regularity or legality of that proceeding, and the court must infer that the said shares did legally pass under the control of the Alien Property Custodian, that his sale thereof conformed to the law, and that through some understanding, not clearly disclosed, the sale of these shares carried with it the properties shown by said Exhibit C to have been seized.

The foregoing assignment is stated to have been recorded in the Patent Office October 7, 1919.

The record further discloses that Holley Securities Company, by an assignment dated October 16, 1919, recorded in the Patent Office October 29, 1919, sold and "set over unto" the Kny-Scheerer Corporation, its successors and assigns, all the rights, title, and interest which Holley Securities Corporation had derived from the Alien Property Custodian, by the conveyance above recited.

It is assumed by us that "The Kny-Scheerer Corporation" of this transaction was the one whose contracts with A. G. F. M. were seized and 2,000 of whose shares were sold by the Alien Property Custodian. The record indicates nothing to the contrary, nor is any question raised here as to the Kny-Scheerer Corporation having been, at the time of the conveyance of October 16, 1919, a legal entity capable of receiving the assignment so made to it.

It further appears that about December 30, 1920, a new corporation was organized under the name of "The Kny-Scheerer Corporation of America," and, by an assignment of that date, recorded in the Patent Office February 8, 1921, the said the Kny-Scheerer Corporation conveyed the properties to the said the Kny-Scheerer Corporation of America.

In January, 1929, the said the Kny-Scheerer Corporation of America was dissolved. There appears in the record, as an exhibit, a certain contract which recites the dissolution referred to, and the organization on December 31, 1928, of "Kny-Scheerer Corporation" for the purpose of acquiring the properties of the corporation dissolved.

The said Kny-Scheerer Corporation then organized is the appellee here, and to it, by an assignment recorded in the Patent Office March 4, 1931, the Kny-Scheerer Corporation of America conveyed the properties which it had received.

This latter assignment seems to have been signed and acknowledged by the president of the Kny-Scheerer Corporation of America on February 26, 1931, and concerning it there is a contention by appellant which will be hereinafter discussed.

In each of the conveyances above recited as having been recorded in the United States Patent Office, trade-mark registration No. 34,826, of June 26, 1900, seems to have been specifically referred to and expressly conveyed, being described as "Aesculap"; the goods for its application being named as "Surgical devices and furniture."

Both the Examiner of Interferences and the Commissioner of Patents agree in the holding that the tribunals of the Patent Office are without jurisdiction to determine the matter of the disputed ownership of registration No. 34,826, the intimation of their decisions being that any rights which appellant may have had therein must be determined and declared by a proceeding in equity, and, since by reason of the conveyances described the legal title to the registration was lodged, according to the Patent Office records, in appellee at the time of the registration complained of, it was held that appellant had no right to the registration, and cancellation was adjudged.

One of the contentions of appellant before us, alluded to above, is based upon the date of the conveyance to appellee by the last assignment heretofore recited.

It is urged that the conveyance by the Kny-Scheerer Corporation of America was not signed and acknowledged by its president until February 26, 1931, that the said corporation had become defunct January 15, 1929, and that the registration therein con-

veyed in fact expired June 26, 1930. Appellant's brief, after substantially reciting the foregoing, says: "It is, therefore, obvious and elemental that petitioner could not have been injured on April 1, 1930, by the registration on that date of appellant's mark herein sought to be cancelled, for it was not then possessed of the mark. A defunct corporation cannot convey title."

We do not think the rights of appellee are affected by this particular situation. While the conveyance to appellee was dated, as alleged, the recital therein is that appellee "obtained all of the rights of The Kny-Scheerer Corporation of America on or about the 15th day of January, 1929." The execution of the conveyance would seem, therefore, to have been in fulfillment of a contract which had been consummated earlier and before the expiration of registration 34,826; the conveyance itself merely constituting evidence of what that consummated contract had been. We should not feel justified in holding, upon the very meager record here presented relating to the dissolution of the Kny-Scheerer Corporation of America, that there was no authority to execute the conveyance on the date it was signed and acknowledged by the official so signing and acknowledging it. There is no showing here that the contract was not executed within the time allowed by statute for the winding up of the affairs of the dissolved corporation, and, in any event, the instrument bears evidence that the contract conveying whatever was conveyed was actually made during the life of registration 34,826.

The general contention of appellant, as first presented to this court, was largely to the effect that, since at the time of the seizure of the mark there was no question with respect to appellant's ownership thereof, the relationship between the parties hereto after the war may and should be considered, and that these are indicative of such a recognition by appellee and its predecessors of ownership by appellant as to preclude appellee from maintaining the cancellation proceeding here at issue.

This contention is not sound. It is inconceivable that appellant did not have knowledge of the seizure of the mark by the Alien Property Custodian and of the status of the legal title thereto at the time of its entrance into the post-war contracts. We find nothing in either of the two such contracts that are of record which relates in any way to trade-mark ownership or usage rights. If there were any understandings between the parties affecting such title or rights, appellant has made no effort to prove them here. No record has been presented which would justify the court in considering anything other than the status of the legal title, even if our authority so to do be assumed.

Subsequent to the oral argument of the case, and after much study of it by the court, counsel for the respective parties were invited to submit briefs upon a phase which it occurred to the court might be involved, but of which little theretofore had been presented; viz., the construction of the language of seizure used by the Alien Property Custodian with a view of determining just what had been seized and conveyed, in so far as it was proper and within the court's authority to consider such construction in determining the question of ownership.

In submitting this question to counsel, the court had in mind the general principles of common law as relating to trade-marks, including the well-established doctrine that generally a trade-mark is not the subject of ownership except in connection with an existing business, as declared, in substance, in Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 405, 36 S. Ct. 357, 60 L. Ed. 713, and the relation thereto of the United States Trade-Mark Registration Law.

In response to our invitation counsel submitted briefs, and these have been quite carefully examined in connection with the authorities therein cited.

After full study of the issues involved and questions presented, it is our view, in the light of the recitations of seizure contained in the conveyance by the Alien Property Custodian to Holley Securities Company, as above quoted, that seizure was made, not only of the specific contracts between A. G. F. M. and appellee's predecessor, but of the trade-marks themselves in connection with the good will of the business which pertained thereto and the certificates of registration thereof, and further that, in the light of the subsequent conveyances which have been enumerated, appellee became such an owner of the mark as to preclude any right of registration on the part of appellant at the time it secured the registration, No. 269,353, of April 1, 1930.

That the Alien Property Custodian was clothed with authority to seize properties

such as patents, trade-marks, and copyrights, by the provisions of the Trading with the Enemy Act, and to make sales thereof, in the manner in which the sale to Holley Securities Corporation was made, is not here seriously questioned, nor do we apprehend that it could be, in view of the decision of the Supreme Court of the United States in the case of United States v. Chemical Foundation, Inc., 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131, wherein that court affirmed a decision of the Circuit Court of Appeals of the Third Circuit [United States v. Chemical Foundation, Inc., 5 F.(2d) 191], which, in turn, had affirmed the decision of the United States District Judge of Delaware [294 F. 300]. See, also, Hicks, Alien Property Custodian, v. Anchor Packing Co., et al. (C. C. A.) 16 F.(2d) 723.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

BLAND, Associate Judge, dissents.